## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARVIN A. WHITE                   *
                                  *
          v.                      *          Civil Action WMN-08-CV-1910
                                  *
HEDWIN CORPORATION                *

     *     *     *     *     *     *     *     *     *     *     *     *

### MEMORANDUM

Before the Court is Defendant Hedwin Corporation's Motion for Summary Judgment. Paper No. 17. The Motion is fully briefed. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and the motion will be granted as set forth below.

## I.   BACKGROUND

This suit arises out of Plaintiff Marvin White's claim that Defendant Hedwin Corporation terminated his employment because of his age (61), in violation of the Age Discrimination in Employment Act ("ADEA"); race (African-American), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); and disability, in violation of the Americans with Disabilities Act ("ADA").[1]

---

[1] Plaintiff also claims that his termination violated the Vietnam Era Veteran's Readjustment Assistance Act of 1974 ("VEVRAA"), 38 U.S.C. § 4212. The Act applies, however, only to contracts with the United States government. Plaintiff has not provided any evidence that Defendant has a qualifying contractual obligation. Moreover, Plaintiff's recourse for such a violation is with the Secretary of Labor.

Plaintiff began working for Defendant on May 1, 2007, as a Reserve Mechanic, Code 25, in the Cubitainer Department at Defendant's Baltimore facility.  Plaintiff interviewed for the position with Jim Tonner, Hedwin Human Resources Manager, James Landon, Shift Supervisor, and Charles White, Cubitainer Department Manager.  Mr. Landon and Charles White were responsible for the decision to hire Plaintiff.  While working for Defendant, Plaintiff reported to Mr. Landon, who in turn, reported to Charles White.

As a new employee, Plaintiff had to complete a 13-week probationary period before becoming a regular employee.  All probationary employees are given a 4-week review and 8-week review in order to be apprised of any performance issues. Employees then have an opportunity to correct the issues before the final 13-week review.

Plaintiff's four-week evaluation reflected poor to failing scores in the areas of productivity and quality, but passing to high scores in safety, attitude, attendance, and housekeeping. His supervisor, Mr. Landon wrote on the evaluation that Plaintiff was "very slow for this type of work.  Must keep up with paperwork and all the other duties that go with the job." As to quality, Mr. Landon wrote that Plaintiff "must be able to identify rejects."  Plaintiff also understood that Mr. Landon wanted him to handle more than one production line at a time,

2

drive a forklift, improve his paperwork, and learn how to recognize product defects. Pl. Dep. 110:10-113:15.

Plaintiff's 8-week evaluation showed similar poor scores in productivity and quality and his rating in housekeeping decreased.  Comments made by Mr. Langdon on the evaluation included, "not able to focus on production and keep up with the other functions of the job," "gets behind with quality checks, and charts.  Paperwork sometimes incomplete," and "do[es] not have time because he takes too much time doing other things like packing."  Charles White wrote on the bottom of the evaluation, "[c]annot keep pace with production lines.  Forgets to start equipment on Monday start-up.  Confused on daily production counts."  Following his 8-week evaluation, Defendant, upon the advice of Mr. Langdon and the decision of Charles White, terminated Plaintiff.

Following his termination, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging age, race, and disability discrimination.  The EEOC issued Plaintiff a right-to-sue letter on or about May 22, 2008. Plaintiff filed this action on July 21, 2008.  Defendant now moves for summary judgment as to all counts.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to

interrogatories, and admissions of record, establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact.  Id. at 323.  The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits, or other documentation which demonstrates that a triable issue of fact exists for trial.  Celotex, 477 U.S. at 324.  Unsupported speculation is insufficient to defeat a motion for summary judgment.  Felty, 818 F.2d at 1128 (citing Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)). Furthermore, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must

be a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material."  Id.

Finally, in assessing such a motion, the Court must view the evidence and all justifiable inferences in the light most favorable to the party opposing the motion.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).

**III. DISCUSSION**

**A.   Title VII and ADEA**

Under Title VII it is an unlawful employment practice for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.  Likewise, the ADEA prohibits discharge on the basis of age where the employee is at least 40 years old. 29 U.S.C. § § 623(a)(1), 631(a).  Race or age discrimination claims may be established through two alternative methods of proof: 1) through a "mixed-motive" framework, requiring direct or circumstantial evidence that the employee's age or race was a motivating factor in the decision to terminate the employee, although it need not be the only factor; or 2) a "burden-shifting" framework, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny, "under which the employee, after establishing a prima facie case of

discrimination, demonstrates that the employer's proffered

permissible reason for taking an adverse employment action is

actually a pretext for discrimination." Hill v. Lockheed Martin

Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004).

Here plaintiff has presented no direct or mixed-motive evidence

of discrimination.[2]  Therefore, Plaintiff must indirectly

establish his discrimination claim and show that the

nondiscriminatory reason for the termination was actually a

pretext for discrimination.

   Under the "burden shifting" framework, the employee must

first establish a prima facie case of discrimination. Hill, 354

F.3d at 285 (citing Texas Dep't of Comm. Affairs v. Burdine, 450

U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411

_____

[2] Plaintiff indicated in his "Statement," which this Court
considers his First Amended Complaint, that his supervisors
called him names such as "that old boy," "oldie," "that old
M.F.," and "that old gray head nigger" and that Charles White
said to him "old folk, I am not going to slap you all over, this
time."  Plaintiff did not raise these statements in his
opposition to Defendant's motion for summary judgment, nor does
it appear that he raised them during his deposition.  Because
Plaintiff does not raise these statements in an affidavit,
deposition, or through other documentation, they are not
considered as evidence to rebut Defendant's summary judgment
motion.  Regardless, even if they could be considered, Plaintiff
does not provide any evidence that the statements related to the
termination decision.  "Application of the mixed-motive
framework requires, at most, 'evidence of conduct or statements
that both reflect directly the alleged discriminatory attitude
and that bear directly on the contested employment decision.'"
Equal Employment Opportunity Commission v. Warfield-Rohr Casket
Co., Inc., 364 F.3d 160, 163 (4th Cir. 2004).  Thus, Plaintiff's
allegations are not sufficient to support a mixed-motive
analysis of Plaintiff's age and race discrimination claims.

U.S. 792, 807 (1973)).  A prima facie case of race or age discrimination requires Plaintiff to present sufficient evidence to prove that: (1) he is a member of a protected group; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) after his termination, the job remained open or he was replaced by someone similarly qualified who is not a member of his protected group.  See Hill, 354 F.3d at 285 (citing Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999)).  Once Plaintiff establishes a prima facie case of discrimination, the burden shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for the [termination]." Id.  If the employer is able to meet its burden, burden shifts back to the plaintiff to demonstrate that the reason offered by the employer is false or pretextual and that the real reason for the action was unlawful discrimination.  Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). Throughout this burden shifting, "the [u]ltimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains . . . with the plaintiff."  Burdine, 450 U.S. at 253.

        Plaintiff is unable to make a prima facie case of race or age discrimination.  First, Plaintiff essentially concedes

during his deposition that he doesn't believe that race was the

reason for his termination.  Pl. Dep. 205:18-206:7

> (Q: Which are the two that you really think it is?  A:
> I really think it is they didn't give me consideration
> for my disability.  They didn't give me really
> consideration of my age. Q: Okay.  A: . . . But I
> really – I don't think it's as much as the race or
> color.  I don't think it's much as that for real as it
> is my age or my disability.).

Second, he presented no evidence that 1) he was performing the

job at a level that met his employer's legitimate expectations;

or 2) he was replaced by someone similarly qualified who is not

a racial minority or under 40.  The record shows that

Plaintiff's superiors thought he was too slow at his job and

that he failed to perform all of the aspects of the job up to

par.  Plaintiff's supervisors apprised him of these problems and

gave him a chance to improve.  Id. at 110:10-113:15, 118:9-17,

130:8-10, 252:7-253:3.  Plaintiff provided no proof to refute

his performance evaluations except to disagree that he was slow

because he felt that his job description included duties that he

should not have to do.  Id. at 206:14-209:18.  Plaintiff does

not know, however, whether his job duties were different from

any of the other mechanics in his position.  Id. at 137:17-

138:2.  Plaintiff also insinuates that calling him slow was a

euphemism for saying that they wanted someone younger and

faster.  Id. at 206:14-211:8. Plaintiff's conclusory assertions

as to his performance and unsubstantiated allegations, however,

fail to establish that he was performing the job at a level that met his employer's legitimate expectations and are not enough to withstand summary judgment.  See Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ("[Plaintiff's] unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers failed to disprove [Defendant's] explanation or show discrimination].").

Although he does not raise the issue in his opposition, his deposition testimony reflects an allegation that he was replaced by a white person.  Pl. Dep. 297:11-298:2.  The record shows differently, however.  According to Taras Lukianczuk, the Human Resources Manager for Hedwin Corporation, the next person to be hired as a Code 25 Reserve Mechanic employed in the Cubitainer Department was a 39 year old African American male.  Lukianczuk Aff. ¶ 8.  Shortly thereafter that employee moved to another department and a 36 year old African-American male replaced him. Id. ¶ 9.  Although this evidence would show that Plaintiff was replaced by a younger individual, Plaintiff provides no information regarding either man's qualifications with which to determine if they were similarly qualified.  Thus, Plaintiff has not provided sufficient evidence to establish a prima facie case on that basis.

Even if Plaintiff were able to make a prima facie case of discrimination, the Company had a legitimate and non-discriminatory reason for Plaintiff's termination that Plaintiff has not rebutted other than through self-serving conclusory opinions.  Moreover, Plaintiff was both hired and terminated by Mr. Landon and Charles White within an eight week time period, during which time Plaintiff's age, 61, did not change.  Pl. Dep. 209:19-210:14.  The fact that the hirer and firer were the same individuals and the termination occurred within a short time frame creates a strong inference "that discrimination was not a determining factor for the adverse action taken by the employer."  Proud v. Stone, 945 F.2d 796, 797-98 (4th Cir. 1991).  Plaintiff has provided no evidence to overcome that inference.  Thus, Plaintiff is unable to meet his burden to establish that Defendant terminated Plaintiff on the basis of his race, color, or age.

## A.    Americans with Disabilities Act Claims

Similar to the age and race discrimination analysis, ADA wrongful discharge claims alleging discrimination on the basis of disability also fall under the McDonnell Douglas burden shifting analysis.  The test to establish a prima facie case, however, is slightly different.  Under the ADA, a plaintiff establishes a prima facie case of wrongful discharge if he demonstrates that (1) he is within the ADA's protected class;

(2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, 53 F.3d 55, 58 (4th Cir. 1995).

Here, Plaintiff has not established a prima facie case of discriminatory discharge under the ADA.  First, Plaintiff has not provided sufficient evidence that he is within the ADA's protected class.  An individual is within the "ADA's protected class" if he has a physical or mental impairment that substantially limits a major life activity, has a record of such impairment, or is regarded as having such impairment.  Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001).  Simply providing evidence of a medical diagnosis of impairment, without more, is insufficient.  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002).

Here, Plaintiff's only evidence of a disability is that he has a 10% service connected disability rating due to a diagnosis of eczematous dermatitis (jungle rot) on his feet, but he provides no evidence of how this diagnosis substantially limits a major life activity.  The closest Plaintiff comes to providing such evidence is indicating during his deposition that he may have been limping and his feet may have been bleeding due to the

heavy steel toe boots that he had to wear.  Pl. Dep. 211:17-
212:17.  His difficulty does not seem to rise to the level of a
substantial limitation, however, as he also said that he did not
normally limp.  Id. at 212:6-7.  When asked by Mr. Tonner if his
foot disability would affect his ability to work, Plaintiff told
him, "I can broad jump, everything, you know.  I said, you know,
it bother me sometime."  Id. at 141:19-20.  He also testified
that he was "in very good physical condition" and that he was
"very fast for my age and size."  Id. at 231:2-3.

Even if Plaintiff were able to establish that he was within
the ADA's protected class, as already discussed, he has not
established that he was performing the job at a level that met
his employer's legitimate expectations.  Moreover, the
circumstances of Plaintiff's dismissal do not raise a reasonable
inference of discrimination on the basis of Plaintiff's
disability.  While Plaintiff says that he told Defendant about
his ten percent disability and that it related to his feet, he
admits that he did not tell them the diagnosis or anything
further about his disability nor did he provide any indication
that Defendant was at all aware of his disability.  Pl. Dep.
141:5-142:8, 147:16-149:3.  "The fact that an employer is aware
of an employee's impairment, without more, is 'insufficient to
demonstrate either that the employer regarded the employee as
disabled or that perception caused the adverse employment

action." <u>Haulbrook</u>, 252 F.3d at 703 (4th Cir. 2001) (citing

<u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 109 (3d Cir. 1996)).

    Plaintiff alleges, however, that had he been provided with

reasonable accommodations that he could have met Defendant's

performance expectations.  Thus, it appears that Plaintiff may

also be raising a "failure to accommodate" claim under the ADA.

To establish an ADA "failure to accommodate" claim Plaintiff

must prove: "(1) that he was an individual who had a disability

within the meaning of the statute; (2) that the [employer] had

notice of his disability; (3) that with reasonable accommodation

he could perform the essential functions of the position . . .;

and (4) that the [employer] refused to make such

accommodations."  <u>Rhoads v. Federal Deposit Ins.</u>, 257 F.3d 373,

387 n. 11 (4th Cir. 2001).  "Implicit in that fourth element is

the requirement that the employee has, in good faith, engaged in

an interactive process to identify, in cooperation with the

employer, what would constitute a reasonable accommodation."

<u>May v. Roadway Express, Inc.</u>, 221 F. Supp. 2d 623, 627 (D. Md.

2002) (citing <u>Loulseged v. Akzo Nobel Inc.</u>, 178 F.3d 731, 736

(5th Cir. 1999)).

    Plaintiff is unable to establish a "failure to accommodate"

claim.  As already discussed, Plaintiff failed to establish that

he had a disability within the meaning of the ADA and, even if

he did, he has not established that Defendant had notice of that

disability.   In addition, Plaintiff provided no evidence that he
engaged in a good faith attempt to work with Defendant to find
reasonable accommodation.   To the extent that Defendant was on
notice that Plaintiff had a 10% service connected disability
rating, Plaintiff stated in his deposition that it was not his
responsibility to tell Defendant that he had a disability or to
request accommodation.[3]  Pl. Dep. 143:1-15, 268:1-8.   Thus,
Plaintiff is unable to meet his burden to establish that
Defendant terminated Plaintiff on the basis of disability or
that Defendant failed to provide Plaintiff with reasonable
accommodation for his disability.

## IV.  Conclusion

     For the foregoing reasons, the Defendant's motion for
summary judgment will be granted.   A separate order will issue.


                         _____/s/_____
                         William M. Nickerson
                         Senior United States District Judge

DATED: October 5, 2009


_____

[3]Although Plaintiff states in his opposition that he requested a
mechanic's helper as a reasonable accommodation and that
Defendant refused, he does not appear to have raised this issue
when asked during his deposition.  Assuming, arguendo, that a
statement in his opposition could be used as evidence in
deciding on a summary judgment motion, demanding one form of
accommodation, particularly a costly one in the form of hiring
another employee, is not a good faith attempt to work with the
employer to find a reasonable accommodation.